UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION, a California corporation,<br><br>  Plaintiff,<br><br>   v.<br><br>INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, an unincorporated labor organization; and INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 54, an unincorporated labor organization,<br><br>  Defendants. | No. 2:11-cv-00940-MCE-KJN<br><br>**AMENDED TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |

----oo0oo----

The Ex Parte Application of Plaintiff Pacific Maritime Association ("PMA") for a temporary restraining order ("TRO") and an order to show cause regarding preliminary injunction was heard before this Court on April 8, 2011. L. Julius M. Turman appeared on behalf of PMA; Defendant International Longshore & Warehouse Union ("ILWU") was represented by Jacob F. Rukeyser.
///

1

The Court determined during the course of the hearing that actual notice of the hearing on Plaintiff's TRO request was provided to Defendants, including both ILWU and ILWU Local 54.

After entertaining oral argument, and following consideration of the memoranda, evidence and declarations submitted by the parties, the Court granted Plaintiff PMA's Application.  The Court found that Plaintiff has met its burden at this stage of the proceedings in showing the propriety of preliminary injunctive relief in the form of a TRO.  Given what appears to be the terms of the operative collective bargaining agreement ("CBA") between the parties,[1] and particularly the fact that the CBA contains both a no-strike clause and provisions mandating that disputes be resolved by arbitration, the Court found that Plaintiff had adequately shown that arbitration decisions already rendered may be binding in nature, and that work stoppages under the CBA are impermissible.  Since such circumstances have been deemed by the Supreme Court to constitute irreparable injury sufficient for purposes of injunctive relief, especially when coupled with the financial loss PMA has demonstrated in its papers, the likelihood of irreparable harm needed for issuance of a TRO was present. <u>Boys Markets, Inc. v. Retails Clerks Union, Local 770</u>, 398 U.S. 235, 248 (1970).  Moreover, since the unimpeded movement of goods through the Port of Stockton appears clearly to be in the public interest, that component of a viable TRO was also satisfied.

---

[1] The applicable CBA is technically known as the Pacific Coast Longshore Contract Document ("PCLCD") and is referred to in this Order either as the CBA or the PCLCD.

2

1  Finally, given the oft-stated federal policy favoring the
2  enforcement of arbitration decisions, the balance of equities
3  also tipped in favor of PMA.  All these factors considered,
4  together with what appears to be a likelihood of success on the
5  merits on the basis of the evidence presented thus far, establish
6  the propriety of a TRO in this case.  <u>Stormans, Inc. v. Selecky</u>,
7  586 F.3d 1109, 1127 (9th Cir. 2009); citing <u>Winter v. Natural</u>
8  <u>Resources Defense Council</u>, 129 S. Ct. 365, 374 (2008).
9      Following the hearing, a TRO was issued in accordance with
10 the Court's ruling on April 8, 2011.  Because the information
11 before the Court, as well as the parties' own representations at
12 the time of the hearing, suggested that only one arbitration
13 award was issued on April 6, 2011, and that only that single
14 award was subject to enforcement, the terms of the TRO referenced
15 only decision C-05-2011.
16     By request dated April 11, 2011, PMA requested that the TRO
17 be amended, explaining that in fact two orders were issued on
18 April 6, 2011, although only one had been reduced to writing.
19 PMA represented that the interim award not reduced to writing (a
20 decision by Relief Area Arbitrator Joseph Lucas) contained a
21 directive that Local Union No. 54's refusal to accept direction
22 from the walking bosses' dispatcher constituted a violation of
23 the applicable collective bargaining agreement between the
24 parties.  The Union, on the other hand, argued that the decision
25 "denied PMA's claims that Local 54 had engaged in a work stoppage
26 in violation of the contract's no-strike provision."  <u>See</u> Decl.
27 Of Marc Cuevas, ¶ 12.
28 ///

Consequently, the two sides presented what amounted to diametrically opposed versions of what the Lucas award accomplished.

Given this discrepancy, the Court addressed the issue at the onset of the April 15, 2011 hearing it scheduled to determine whether a preliminary injunction should issue.  Counsel at that point presented a written award memorializing what in fact transpired at the time of the April 6, 2011 hearing before Relief Area Arbitrator Lucas.  That decision, dated April 14, 2011 and denominated as NCAA-021-2011, found that an illegal work stoppage had occurred in violation of Sections 11.1 and 17.57 of the PCLCD.  Therefore, PMA's depiction of the Area Relief Arbitrator's award was accurate as opposed to the Union's countervailing version of what took place.

At the time of the April 15, 2011 hearing, at the request of counsel for the Union[2] and as assented to by PMA, this Court determined that an evidentiary hearing was necessary in order to determine whether or not a preliminary injunction should issue.

///
///
///
///

---

[2] Although Local 54's representation had not yet been confirmed at the time of the Court's initial April 8, 2011 hearing on the TRO, by the time of the subsequent April 15, 2011 preliminary injunction counsel for the ILWU confirmed that it was representing both the ILWU and the ILWU Local 54.  Counsel appearing at the time of the April 15, 2011 for both PMA and the Union (the term "Union" as used herein collectively refers to both the ILWU and ILWU Local 54) were the same individuals who represented PMA and the ILWU at the time of the April 8, 2011 as delineated above.

4

Pursuant to Federal Rule of Civil Procedure 65(b)(2), which permits the Court to extend the duration of a TRO for a maximum of 28 days, the TRO in this matter was extended until May 5, 2011 at 2:00 p.m. when the requested evidentiary hearing will be held, and when the continued Hearing on the Order to Show Cause regarding Preliminary Injunction will also be conducted.  Given what had transpired since the time of the initial April 8, 2011 hearing, the following amended TRO will accordingly be issued:

**TEMPORARY RESTRAINING ORDER**

   Defendants International Longshore and Warehouse Union, International Longshore and Warehouse Union, Local 54, their respective officers, stewards, business agents, agents, employees and members, and all persons acting on behalf of, or in concert with, any of them ("Associated Individuals") are hereby restrained and enjoined pending the May 5, 2011 Hearing on the Order to Show Cause regarding Preliminary Injunction that:

   1.  ILWU Local 54 and its Associated Individuals shall immediately comply with the PCLCD's provisions requiring the parties to observe and implement all arbitration awards, and Local 54 shall refrain from any strike or work stoppage in violation of the PCLCD'S provisions prohibiting strikes and other work stoppages.

///
///
///
///

5

ILWU Local 54 and its Associated Individuals shall therefore immediately comply with the arbitrator's written awards of April 6, 2011 (C-05-2011, incorporating by reference the terms of a previous May 10, 2009 award (C-05-2009)), April 14, 2011 (NCAA-021-2011); and August 23, 2010 (C-07-2010).[3]

2.  ILWU and its Associated Individuals shall immediately comply with the arbitrator's written awards of April 6, 2011 (C-05-2011, incorporating by reference the terms of a previous May 10, 2009 award (C-05-2009)), April 14, 2011 (NCAA-021-2011); and August 23, 2010 (C-07-2010).

**ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

Defendants are hereby ordered to show cause why the above Temporary Restraining Order shall not be entered as a preliminary injunction pending trial of this matter. The Hearing on said Order to Show Cause shall be on **Thursday, May 5, 2011 at 2:00 p.m.** An evidentiary hearing will take place at that time not to exceed two (2) hours, with each side being allotted half that total time, or one (1) hour, for their respective presentations.

///

///

---

[3] Although the Area Relief Arbitrator's April 15, 2011 award does not specifically incorporate the terms of the August 23, 2010 Order, because said 2010 Order was a binding decision rendered by the Coast Arbitrator affirming an earlier June 12, 2009 by Area Arbitrator Terry Lane (to the extent Lane found that an illegal work stoppage had occurred under what appear to be virtually identical factual circumstances), the Court determines that compliance with the Coast Arbitrator's August 23, 2010 Order (C-07-2010) should also be mandated to the extent it affirms the earlier 2009 ruling (NCAA-027-2009).

1  In advance of that hearing, the parties may file additional
2  simultaneous briefing not later than **April 28, 2011 at 4:00 p.m.**
3  Defendants shall have the right to apply to the Court for
4  modification or dissolution on two days' notice.
5       IT IS SO ORDERED.

Dated: April 18, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

7